UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No.:1:13-cr-18 |
| v. | ) | |
| | ) | Mattice/Carter |
| | ) | |
| DIMITRICE HAMMOND | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Dimitrice Hammond's Motion to Suppress (Doc. 12) is before the undersigned Magistrate Judge having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Defendant is charged with various federal drug trafficking and firearm charges. The Defendant seeks suppression of any and all evidence seized by law enforcement on the ground that his duffle bag was illegally searched. For the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on Monday, June 03, 2013. Officers Eric Massengale and Jeremy Durham were the only witnesses to testify. Officer Eric Massengale is employed by the East Ridge Police Department where he has been assigned primarily to patrol for the past year and a half. Massengale previously worked three years in law enforcement in Red Bank. Officer Jeremy Durham is employed by the East Ridge Police Department where he now works as a tactical patrol officer. Durham has been with the East Ridge Police Department for about seven or eight years. He has also worked for the

Hamilton County Police Department. Both officers were working the third shift from 10:45 pm to 6:45 am on the night in question.

On August 25, 2012, at approximately 3:00 am, officers of the East Ridge Police Department were dispatched to the intersection of South Germantown Road and Frawley Street after receiving a call about a suspicious person at the location. The caller said that there had been a recent string of break-ins in the area. Officer Rievley was the first officer at the scene with Officers Massengale and Durham arriving shortly thereafter. As Officer Massengale arrived, he observed the Defendant and Officer Rievley talking. Officer Massengale testified he approached and asked Defendant, also known as Bubba, how he was doing. Officer Massengale stated that he knew the Defendant from high school. The Defendant was not handcuffed at the time, nor was he in custody.

Approximately 30 seconds after Officer Massengale arrived, Officer Durham arrived. Upon his arrival, Officer Durham noticed a plain, black duffle bag lying on the corner of the street approximately twenty-five feet from where the Defendant, Officer Massengale, and Officer Rievley were standing. Officer Durham picked up the duffle bag and asked the Defendant if the bag belonged to him, but the Defendant did not respond. Officer Durham again asked the Defendant if the bag was his, and the Defendant said the bag did belong to him and contained his "basketball stuff." Officer Durham then put the bag back down and heard a metallic clanking sound that was inconsistent with that of "basketball stuff." Officer Durham asked the Defendant, for a third time, if the duffle bag was his, and the Defendant said that he had been lying and that it was not his bag. Between the second and third questions of whether the bag belonged to the Defendant, Officer Durham called Officer Massengale over and indicated that the Defendant looked as if he was about to run.

2

Officer Durham ordered the Defendant to place his hands on the police car so that they could detain him. The Defendant complied with the officer's orders. Officer Massengale testified that Defendant was not under arrest and that he intended to detain the Defendant for officer safety. As Officer Massengale attempted to detain the Defendant, the Defendant started to run. Officer Durham then shot and hit the Defendant with a taser gun. Defendant then informed the officers that he was no longer running. Defendant was handcuffed and arrested for evasion.

Following Defendant's apprehension, Officer Massengale patted down the Defendant and found approximately 6.8 grams of methamphetamine, digital scales, and $250 on his person. The officers then opened the duffle bag and discovered a sawed-off New England Arms shotgun with a barrel approximately 13 inches in length. The total length of the shotgun was approximately 20 inches. Twenty-five shotgun shells were also found in the duffle bag. The shotgun's serial number had been removed.

Officer Durham read the Defendant his rights as the Defendant sat in the back of the police car. Neither officer remembers the Defendant making any statements while in the car.

### III. Analysis

The Defendant argues that the officers unlawfully searched his duffle bag, and; therefore, all evidence seized as a result of the search should be suppressed. The Defendant asserts that the duffle bag was illegally searched on two instances: first, when Officer Durham picked up the duffle bag, and second, when Officer Durham unzipped the duffle bag. The Defendant also asserts that he had a legitimate expectation of privacy in that he had "the right to expect no one would touch the bag without probable cause to believe that contraband or illegal items would be found in the bag". (Defendant's Motion at 3 (Doc. 12)). The Government argues that the Defendant lacks sufficient standing to challenge the search and seizure of the duffle bag, and,

3

therefore, the motion to suppress should be denied. The Government asserts that by denying ownership of the duffle bag, the Defendant abandoned the bag.

The Defendant argues that Officer Massengale had no legal basis to touch the bag. The Supreme Court has held that law enforcement officer's physical manipulation of Defendant's carry-on bag on a bus violated the Fourth Amendment. *Bond v. United States*, 529 U.S. 334 (2000). *See also*, *United States v. Gwinn,* 191 F.3d 874 (8th Cir. 1999) (officer's manipulation of exterior of soft-sided bag in overhead storage compartment was unlawful search). However, the Sixth Circuit has held that defendants are not entitled make Fourth Amendment challenges to evidence seized from disclaimed luggage. *See United States v. Peters,* 194 F.3d 692, 698-99 (6th Cir. 1999) (bus passenger who denied ownership of attached case in overhead bin had no standing to contest search and seizure of case's contents); *United States v. Frazier*, 936 F.2d 262, 265 (6th Cir. 1991) (airport passenger's disclaimer that bag was not his constituted an abandonment that resulted in defendant's lack of standing to challenge the search); *United States v. Knox*, 839 F.2d 285, 293-94 (6th Cir. 1988) (defendants who denied ownership of travel bag had no standing to contest its search); *United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 1982) (a defendant's affirmative indication that she had no possessory interest in the luggage meant that she had no expectation of privacy as to its contents; therefore, her Fourth Amendment rights were not violated by the search of the bag).

There was no manipulation of the duffle bag in this case as there was in *Bond v. United States*. In *Bond*, the officer squeezed a passenger's bag in violation of the Fourth Amendment. *Id* at 336. Here, Officer Durham simply picked up the bag and put it back down after asking the Defendant if it was his. The metal clanking sound made when Officer Durham placed the duffle bag down indicated that the bag may not have held "basketball stuff" as the Defendant stated.

4

The Defendant then disclaimed ownership of the bag surrendering any Fourth Amendment protections he may have had.

It is well settled that when a person abandons property, he no longer possesses a reasonable expectation of privacy in that property. *Hester v. United States*, 265 U.S. 57, 58 (1924); *accord United States v. Robinson,* 390 F.3d 853, 873-74 (6th Cir. 2004). Absent a legitimate expectation of privacy in the place or thing to be searched, the Fourth Amendment provides no protection against unreasonable searches and seizures of that place or thing. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Gooch*, 499 F.3d 596, 601 (6th Cir. 2007). In this regard, it has routinely been held that where a Defendant discards an item in a public place to avoid arrest immediately before a police encounter, the Defendant has abandoned that property for purposes of determining whether he has a legitimate expectation of privacy in the item. *See California v. Hodari,* 499 U.S. 621, 629 (1991); *United States v. Dillard*, 2003 WL 22400724 *4-5 (6th Cir. Oct. 20, 2003) (and cases cited therein). In *United States v. Cruthers,* 458 F.3d 459, 463 n. 1 (6th Cir. 2006), the Defendant was deemed to have abandoned his firearm for Fourth Amendment purposes when he discarded it in an alley while being pursued by police.

In the instant case, Officer Durham noticed the duffle bag as he first appeared on the scene. The bag was approximately twenty to twenty-five feet away from where the Defendant and other officers were standing. When Officer Durham picked the bag up and asked the Defendant if the bag was his, the Defendant did not respond. When Officer Durham repeated the question, the Defendant said it was his "basketball stuff." As Officer Durham placed the duffle bag back on the ground he heard a clanking sound. Officer Durham, once more, asked the Defendant if the bag was his, but this time the Defendant said he lied before and it was not his bag. Officer Durham concluded that the Defendant, at this time, abandoned the duffle bag.

Consequentially, Defendant abandoned any legitimate expectation of privacy in the duffle bag before Officer Durham opened the bag, so Officer Durham's search of the bag did not violate any of the Defendant's rights under the Fourth Amendment.

IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.[1]

/s/ *William B. Mitchell Carter*
William B. Mitchell Carter
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

6

Case 1:13-cr-00018-HSM-WBC   Document 21   Filed 06/19/13   Page 6 of 6   PageID #: 50